**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
**CHARLES M. HALLINAN,**                                  :
                                                          :
                                      **Plaintiff,**      :
                                                          :        **06 Civ. 185 (HB)**
                   **- against -**                        :
                                                          :        <u>**OPINION**</u>
                                                          :        <u>**AND**</u> <u>**ORDER**</u>
**REPUBLIC BANK & TRUST COMPANY,**                        :
                                                          :
                                      **Defendant.**      :
------------------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:**

     Defendant Republic Bank & Trust Company ("Defendant" or "Republic") moves for a post-trial judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), or in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59.

     For the reasons detailed more fully below, Republic's motion for judgment as a matter of law is denied as to all parts but one. Republic's motion for a new trial is denied in its entirety.

## I.      BACKGROUND

     A short recounting of the proceedings at trial will be provided here at the outset. Additional facts will be provided as they relate to Republic's particular post-trial motions.

     The case arose following disputes between Defendant Republic Bank & Trust Co. and the company Benefits Express, LLC ("Benefits"). Benefits was in the business of providing banking services to "underserved" individuals, and was later the subject of an acquisition by Republic. Thereafter, Plaintiff Charles Hallinan ("Plaintiff" or "Hallinan") brought this breach of contract claim against Republic.[1] Hallinan's breach claim stemmed from a 2001 contract signed by Hallinan, Republic, and Benefits pursuant to

---

[1] Hallinan, in his Complaint, also brought claims against Republic for tortious interference with contract, fraud, constructive fraud, and negligent misrepresentation. On June 1, 2006, I dismissed Hallinan's tortious interference claim. <u>See</u> <u>Hallinan v. Republic Bank & Trust Co.</u>, 2006 U.S. Dist. LEXIS 34875, at *14-16 (S.D.N.Y. 2006). On January 8, 2007, I dismissed Hallinan's fraud, constructive fraud, and negligent misrepresentation claims, leaving only Hallinan's breach claim for trial. <u>See</u> <u>Hallinan v. Republic Bank & Trust Co.</u>, 2007 U.S. Dist. LEXIS 503, at *43-49 (S.D.N.Y. 2007).

which Hallinan loaned money to Benefits that was then paid directly to Republic.  See generally Hallinan v. Republic Bank & Trust Co., 2007 U.S. Dist. LEXIS 503, at *3-8 (S.D.N.Y. 2007) (denying summary judgment to Republic on Hallinan's breach of contract claim).  Hallinan produced evidence at trial that showed that he ultimately paid $359,577.31 to Benefits pursuant to the 2001 contract.  See Plaintiff's Trial Exhibit ("Pl. Ex.") 10.

In 2003, Benefits brought claims against Republic that were resolved by arbitration on March 24, 2006.  See Def. Ex. I; see generally Hallinan v. Republic Bank & Trust Co., 2007 U.S. Dist. LEXIS 503, at *20 (S.D.N.Y. 2007).  Hallinan, on behalf of Benefits, paid by his own account a total of $83,195.45 towards Benefits' litigation costs against Republic.[2]  According to evidence proffered by Republic at trial of this action (and not disputed by Hallinan), Hallinan in fact paid a total of $97,689.45 towards Benefits' litigation costs.[3]

The Benefits-Republic arbitrator, inter alia, awarded Benefits $275,624 (excluding interest) as a result of Republic's breach of the 2001 contract vis-à-vis Republic.  Def. Ex. I.  In my January 8, 2007 Opinion, I held that the arbitrator's decision collaterally estopped Republic from arguing that it did not breach the 2001 contract vis-à-vis Hallinan.  Hallinan v. Republic Bank & Trust Co., 2007 U.S. Dist. LEXIS 503, at *41-42.

Accordingly, I conducted a jury trial, from January 29 through January 31, 2007, to determine two questions: 1) whether privity existed between Hallinan and Benefits at

---

[2] See Def. Ex. H, Pl. Ex. 14 (chart showing that Hallinan Capital Corp. paid a total of $83,195.45 towards the Benefits Express arbitration, in six installments paid on December 30, 2004 ($6,000, to the American Arbitration Association), December 30, 2004 ($7,118.57, to Bartels & Feureisen LLP, Benefits' counsel of record), September 8, 2005 ($10,000, to Barry Kessler), October 13, 2005 ($15,236.12, to Bartels & Feureisen LLP), October 25, 2005 ($13,500, to the American Arbitration Association), and January 27, 2006 ($31,340.76, to Bartels & Feureisen LLP)); see also Tr. 98:10-12 (Hallinan: "I paid approximately $83,000 on behalf of Benefits Express so that they could sustain the litigation.")

[3] Republic proffered additional evidence of a copy of a seventh check paid by Hallinan Capital Corp. on June 14, 2004 to Bartels & Feureisen LLP for $14,494.  See Def. Ex. EE.  Hallinan, when questioned about the $14,494 payment, demurred, but ultimately did not dispute that the payment was made to fund the Benefits litigation.  See Tr: 135:2-9 (Question: "In addition to the $83,000 that you reflected in your chart, there was actually an additional $14,494 payment that you made to Mr. Feureisen to fund the litigation, correct?" Hallinan: "I don't know if that is correct or not." Question: "If that is what the exhibits reflect, you wouldn't dispute that, would you?" Hallinan: "If that is what these exhibits add up to, I would not dispute it.")

the time of the Benefits-Republic arbitration;[4] and if not, 2) the damages Hallinan was separately owed by Republic, if any, because of Republic's breach of the 2001 contract.[5] Republic argued strenuously at trial that Hallinan was a shareholder of Benefits, rather than a creditor, that Benefits accordingly owed Hallinan a fiduciary duty, and thus that privity existed between Hallinan and Benefits at the time of the prior arbitration.

Regarding the first question of privity, the jury, on its verdict sheet, was asked, "Do you find by a preponderance of the evidence that privity existed between Plaintiff Charles Hallinan and Benefits Express, LLC at the prior arbitration between Benefits and Defendant Republic Bank?" The jury answered, "No." See Judgment, Feb. 2, 2007, Docket Entry #80, 06-cv-185 (S.D.N.Y.) ("Judgment").

The second question on the verdict sheet asked, "Do you find by a preponderance of the evidence that Defendant Republic Bank owes damages to Plaintiff Charles Hallinan for its breach of the 2001 contract?" The jury answered, "Yes." See Judgment. The jury found that Republic owed Hallinan $456,272.76 in resultant damages. Id. Regarding prejudgment interest, the jury foreperson handwrote on the verdict sheet that "[p]rejudgment interest shall be calculated based on each amount stated from each payment date stated on Plaintiffs' exhibit 10 and [D]efendants' exhibit R." Id.; see also Trial Transcript ("Tr.") 483:20-22. Plaintiffs' Exhibit 10 listed the payments that Hallinan had made to Benefits pursuant to the 2001 contract, totaling $359,577.31, and the respective dates of payment. See Pl. Ex. 10. Defendants' Exhibit R showed copies of several, but not all, of the checks that Hallinan had paid in support of Benefits' arbitration.[6] See Def. Ex. R. The total amount of the checks listed in Exhibit R is either

---

[4] If privity existed between Hallinan and Benefits, I would then determine whether, as a matter of law, Hallinan was precluded by res judicata or collateral estoppel from recovering damages from Republic owing from Republic's 2001 breach. See generally Hallinan v. Republic Bank & Trust Co., 2007 U.S. Dist. LEXIS 503, at *25-43. Because those questions of preclusion by res judicata or collateral estoppel are legal questions, not factual questions, those questions were not submitted to the jury.

[5] Republic moved for a directed verdict at the conclusion of Hallinan's case. I reserved decision on that motion at the time. See Tr. 347:16-19. Republic then declined to call any witnesses in its defense. Tr. 347:20-23. I subsequently again reserved decision on Republic's motion for a directed verdict. Tr. 398:16-18.

[6] Defendant's Exhibit R showed copies of six checks. Five of those six checks were the same as five of the six checks that Hallinan listed on his Plaintiff's Exhibit 14 as paid on behalf of Benefits' litigation expenses – i.e., December 30, 2004 ($6,000, to the American Arbitration Association), December 30, 2004 ($7,118.57, to Bartels & Feureisen LLP, Benefits' counsel of record), September 8, 2005 ($10,000, to Barry Kessler), October 13, 2005 ($15,236.12, to Bartels & Feureisen LLP), and October 25, 2005 ($13,500, to the American Arbitration Association).

$57,854.69 (if one counts the duplicate copy provided by Defendant of the December 30, 2004 check for $6,000), or $51,854.69 (not counting the duplicate $6,000 check).  The Clerk of the Court, in the final judgment, computed prejudgment interest on *both* the $6,000 check *and* its duplicate copy – thus computing prejudgment interest on a total amount of $57,854.69 (regarding the monies listed in Defendant's Exhibit R).[7]  <u>See</u> Judgment.

Republic timely filed their post-trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), or in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59, on various grounds.  Regarding Republic's motion for judgment as a matter of law, Republic specifically argues, despite the jury verdict, that a) Hallinan and Benefits were in privity, and thus Hallinan is precluded by *res judicata* from recovering against Republic; b) Hallinan waived his right to bring this action under the doctrine of "election of remedies" and c) regarding the portion of the judgment that compensated Hallinan for the legal fees he paid on behalf of Benefits, such fees are not recoverable as a matter of law in a breach of contract action.  Regarding Republic's motion for a new trial, Republic specifically argues that a) various charges provided by the Court relating to privity were erroneous or prejudical; b) Hallinan's closing argument improperly referred to matters outside the evidence; and c) the Court's exclusion of certain testimony improperly prejudiced Republic's efforts to pursue their defenses of "waiver" or "election of remedies."

## II.      STANDARD OF REVIEW

### A.  <u>Standard for Judgment as a Matter of Law Pursuant to Rule 50(b)</u>

---

Defendant's Exhibit R included as its sixth check a duplicate copy of the December 30, 2004 check for $6,000 that Hallinan paid to the American Arbitration Association.  (Although the duplicate copy has additional handwriting in the "Memo" section, it is clear that it is the same check, because the check number is the same.)

Defendant's Exhibit R omitted, however, the final check that Hallinan listed on his Plaintiff's Exhibit 14 as paid January 27, 2006, for $31,340.76, by Hallinan Capital Corp. to Bartels & Feureisen LLP.  (A copy of that check was, however, included in Defendant's Exhibit EE, although the jury did not refer to Defendant's Exhibit EE in its verdict.)

[7] The Clerk of the Court also computed prejudgment interest on the $359,577.31 of payments listed in Plaintiff's Exhibit 10.  Accordingly, all told, including prejudgment interest, I entered judgment for Hallinan for $630,202.09.  <u>See</u> Judgment.

Rule 50(b) states, in pertinent part, that "the movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment… [and] may alternatively request a new trial or join a motion for a new trial under Rule 59.  In ruling on a renewed motion, the court may: (1) if a verdict was returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law."  See generally Remee Prods. Corp. v. Sho-Me Power Elec. Coop., 2003 U.S. Dist. LEXIS 494, at *5 (S.D.N.Y. 2003) (Baer, J.), quoting Fed. R. Civ. P. 50(b).

To decide whether judgment as a matter of law is warranted, the Court must decide "whether the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [people] could have reached."  Mallis v. Bankers Trust Co., 717 F.2d 683, 688 (2d Cir. 1983) (internal citations and quotations omitted).  The trial court should grant judgment as a matter of law only when: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture; or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded people could not arrive at a verdict against the movant.  Lambert v. Genesee Hosp., 10 F.3d 46, 56 (2d Cir. 1993), cert. denied, 511 U.S. 1052, 128 L. Ed. 2d 339, 114 S. Ct. 1612 (1994).  On a motion for judgment as a matter of law, the district court "must view the evidence in the light most favorable to the party against which the motion was made . . . making all credibility assessments and drawing all inferences in favor of the non-movant."  EEOC v. Ethan Allen, Inc., 44 F.3d 116, 119 (2d Cir. 1994) (internal citations omitted).

B.  Standard for Motion for a New Trial Pursuant to Rule 59(a)

Rule 59(a) states, in pertinent part, that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  See generally Remee Prods. Corp. v. Sho-Me Power Elec. Coop., 2003 U.S. Dist. LEXIS 494, at *7, quoting Fed. R. Civ. P. 50(b).

The decision whether to grant a new trial following a jury trial under Rule 59 is

"committed to the sound discretion of the trial judge." <u>Metromedia Co. v. Fugazy</u>, 983
F.2d 350, 363 (2d Cir. 1992), <u>cert. denied</u>, 508 U.S. 952, 124 L. Ed. 2d 662, 113 S. Ct.
2445 (1993).  However, the trial judge should exercise such discretion only in "the most
extraordinary circumstances." <u>United States v. Locascio</u>, 6 F.3d 924, 949 (2d Cir. 1993).
Further, the power of a district court to grant a new trial based on the weight of the
evidence is limited to instances in which the court is "convinced that the jury has reached
a seriously erroneous result or that the verdict is a miscarriage of justice." <u>Ishay v. City
of New York</u>, 158 F. Supp. 2d 261, 263 (E.D.N.Y. 2001), <u>quoting</u> <u>Hugo Boss Fashions,
Inc. v. Fed. Ins. Co.</u>, 252 F.3d 608, 623 (2d Cir. 2001).  In considering whether a verdict
is so "seriously erroneous" as to justify a new trial, the district court "is free to weigh the
evidence and 'need not view [the evidence] in the light most favorable to the verdict
winner.'" <u>Farrier v. Waterford Bd. of Educ.</u>, 277 F.3d 633, 634 (2d Cir. 2002), <u>quoting
DCL Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 134 (2d Cir. 1998).  In addition,
"before a [district] court may set aside a special verdict as inconsistent and remand the
case for a new trial, it must make every attempt 'to reconcile the jury's findings, by
exegesis if necessary.'" <u>The Cayuga Indian Nation of New York v. Pataki</u>, 165 F. Supp.
2d 266, 281 (N.D.N.Y. 2001), <u>quoting</u> <u>Turley v. Police Dep't of N.Y.</u>,167 F.3d 757, 760
(2d Cir. 1999) (other citation omitted).  In assessing whether a given verdict is
inconsistent, the Second Circuit has held that "where the district court properly instructed
the jury . . ., there is a strong presumption that the jury in reaching its verdict
complied with those instructions," and that "[a] jury's verdict reached after proper
instructions must be upheld where there is a reasonable explanation for the jury's
seemingly inconsistent answers." <u>Id</u>. at 282-83 (internal citations omitted).

### III.    DISCUSSION

I will first address Republic's motions for judgment as a matter of law.  I will then
address Republic's motions for a new trial.

A.  <u>Republic's Motions for Judgment as a Matter of Law</u>

i.  *Republic's Argument That Hallinan and Benefits Were In Privity, and
Thus Hallinan's Breach Claim Was Precluded By Res Judicata As A
Matter of Law*

Republic first requests judgment as a matter of law on the grounds that Hallinan

and Benefits were in privity at the time of Benefits' prior arbitration, and thus that principles of *res judicata* bar Hallinan's claims.[8]

A determination in a prior judicial proceeding estops a claim by a nonparty only if that nonparty was in privity with a party to that proceeding – i.e., if the nonparty was "represented by a party to the prior proceeding, or exercised some degree of actual control over the presentation on behalf of a party to that proceeding. Stichting ter behartiging van de belangen van oudaandeelhouders in het kapitaal van Saybolt Int'l B.V. v. Schreiber, 327 F.3d 173, 184-85 (2d Cir. 2003) ("Stichting"). The Second Circuit recognizes "privity based on representation only if the interests of the person alleged to be in privity were 'represented [in the prior proceeding] by another vested with the authority of representation.'" Id. at 185 (citations omitted). This Circuit has "thus found privity where a party to a previous suit was, at the time of the litigation, acting as either a fiduciary or organizational agent of the person against whom preclusion is asserted." Id. (collecting cases).

In those cases where this Circuit has applied the doctrine of privity to a person who was not represented by a fiduciary or agent in the previous litigation, there was a finding that "that person nonetheless exercised some degree of actual control over the presentation of a party's case at the previous proceeding." Stichting at 185 (citations omitted). Preclusion can thus apply against a person who, although not party to the previous litigation, served in a representative capacity to direct that litigation, or who "formulated an overarching strategy for the two actions." Id. (citations omitted).

Republic first argues that the evidence at trial establishes as a matter of law that Hallinan was "represented" by Benefits at Benefits' prior arbitration against Republic in such a manner as to establish privity.[9]   As I noted in my January 8, 2007 Opinion, since

---

[8] Republic appears to primarily seek judgment as a matter of law on the grounds that *res judicata*  (i.e. claim preclusion) bars Hallinan's claims. Republic raises collateral estoppel (i.e. issue preclusion) only indirectly in its briefs when it cites to caselaw on privity. See Republic Bank & Trust's Post-Trial Motions…, February 20, 2007 ("Republic Mot."), at 6, citing, e.g., Beatus v. Gerbia, 4 F.Supp.2d 256, 260 (S.D.N.Y. 1998). Hallinan averred in his opposition that Republic did not argue collateral estoppel at trial and that collateral estoppel had no application in these motions. See Hallinan Opposition at 19. Republic did not contend otherwise in its Reply. Accordingly, any argument by Republic that collateral estoppel bars Hallinan's claims is waived.

In any event, as the determinative inquiry here under both *res judicata* and collateral estoppel analysis would be the question of privity, it is unnecessary to distinguish the two strands of preclusion doctrine here.

[9] Republic also argues that this Court erred when it cited Stichting in instructing the jury on the standard for

Benefits admittedly owed a fiduciary duty to its shareholders, the key inquiry was whether Hallinan had some independent interest in the 2001 contract aside from his shareholder's interest in Benefits.  See Hallinan v. Republic Bank & Trust Co., 2007 U.S. Dist. LEXIS 503, at *28-35 ("If Hallinan signed the 2001 Overdraft Contract as a 'shareholder,' his interests in recovering for breach of that contract are in all likelihood encompassed by his status as a 'shareholder.'").  Yet Hallinan and Kessler, Benefits' President, both testified at trial that Hallinan was not a shareholder, but a creditor.  See Tr. 81:8-12, 245:3-5.  Kessler pointed to the fact that Benefits' tax returns did not list Hallinan as a shareholder.  Tr. 343:4-8.  Indeed, Republic's Answer stated that "Hallinan is a creditor of Benefits Express."  See Answer ¶ 5.  That language was read to the jury as a judicial admission.  See Tr. 347:4-6.  The presentation of such facts and others, while hotly contested, are the essence of what a jury trial is all about and here the evidence proved sufficient for the jury to find that Hallinan was not a shareholder of Benefits, that Hallinan was accordingly not "represented" by Benefits at the prior arbitration, and thus that privity did not exist on those grounds.

Republic next argues that the evidence at trial establishes, as a matter of law, that Hallinan controlled Benefits' prior arbitration against Republic in such a manner as to establish privity.  Republic cites to the fact that Hallinan paid for the vast majority of Benefits' legal fees as evidence of Hallinan's control.  Hallinan, however, proffered evidence and testimony at trial that, inter alia, Benefits' lawyer David Feureisen did not represent Hallinan nor have an attorney-client relationship with him; that Hallinan did not participate in strategy decisions regarding the litigation, such as the drafting of the

---

privity.  According to Republic, the New York standard for determining privity by "virtual representation" is substantively broader than the "federal common law" standard articulated by the Stichting Court, in that under New York law, one may be in privity if his rights or obligations are "derivative of" or "conditioned on" the rights of the party to the prior litigation.  See Juan C. v. R.C. Cortines, 679 N.E.2d 1061, 1065 (N.Y. 1997), citing D'Arata v. New York Cent. Mut. Fire Ins. Co., 564 N.E.2d 634, 637 (N.Y. 1990).  According to Republic, this Court erred, under Erie doctrine, by providing the jury with language based on the "narrower" standard of Stichting rather than the "broader" standard articulated by the New York courts.  Concomitantly, according to Republic, not only is Republic entitled to a new trial, but the evidence adduced at trial establishes as a matter of law that Hallinan meets this "broader" New York formulation of privity.

As articulated further in Section III.B.i,, I find that Republic's argument is a red herring, and that the New York courts do not articulate a substantively different or "broader" formulation of privity.  More to the point, there existed sufficient evidence for the jury to find that Hallinan was neither "represented by another with the authority of representation," nor that his rights or obligations were "conditioned on" nor "derivative of" Benefits' rights or obligations.

Complaint, the selection of witnesses and exhibits, or the selection of an arbitrator; and that Hallinan did not participate in the arbitration except as a witness.  See, e.g., Tr. 95:20-98:12, 162:21-163:10, 164:8-24, 171:14-173:8.  Again, the jury heard it all and concluded that the evidence was sufficient to prove by a preponderance of the evidence that no privity existed here and voted unanimously to that effect.

Third, Republic argues that because Benefits was in the "zone of insolvency" at the time of its prior arbitration, it owed a fiduciary duty to its creditors, such as Hallinan, that establishes privity between Hallinan and Benefits and thus precludes Hallinan's breach claim as a matter of law.  See, e.g., In re Adelphia Communs. Corp., 323 B.R. 345, 386 n.140 (Bankr. S.D.N.Y. 2005) ("when a corporation becomes insolvent or enters into the zone of insolvency, the fiduciary duties of a corporation expand from its stockholders to its creditors."), citing, e.g., In re STN Enterprises, 779 F.2d 901, 904 (2d Cir. 1985).  Republic cites to the fact that in the spring of 2003, when Benefits brought its claims against Republic, Benefits owed its creditors more than $500,000, and Hallinan specifically more than $350,000.  See Def. Ex. K.  Benefits sold its assets to Republic for an amount less than those debts (i.e. $200,000) in the spring of 2003, and the Benefits-Republic arbitrator later found $200,000 to be the fair market value of those assets.  Def. Ex. I.

Republic, however, did not raise the "zone of insolvency" defense at any point in this litigation, up to and including trial.[10]  Republic did not raise the "zone of insolvency" issue in its Rule 50(a) motion.  See Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 286 (2d Cir. 1998) (Rule 50(b) post-trial motion is "limited to those grounds that were specifically raised in the prior [Rule 50(a)] motion"…).  Republic did not submit a jury instruction as to the "zone of insolvency" defense, nor did it object when the jury instructions did not mention the "zone of insolvency."  See Fed. R. Civ. P. 51(d)(1)(B).[11]  Republic did not object to the verdict sheet, which likewise did not pose a

---

[10] Indeed, Republic did not raise the "zone of insolvency" defense at trial despite the fact that I noted sua sponte the existence of the defense in my Opinion that denied summary judgment to Republic.  See Hallinan v. Republic Bank & Trust Co., 2007 U.S. Dist. LEXIS 503, at *32, 32 n.29 ("Although Benefits management owes a fiduciary duty to its shareholders, it does not owe the same fiduciary duty to creditors. Note, however, that 'once a corporation enters the 'zone of insolvency,' the directors owe fiduciary duties to the corporations' creditors, in addition to its shareholders.'"), citing RSL Communs. PLC v. Bildirici, 2006 U.S. Dist. LEXIS 67548, at *26-27 (S.D.N.Y. 2006).

[11] "A party may assign as error… a failure to give an instruction if that party made a proper request under

question regarding the "zone of insolvency."[12]  Republic's counsel did not mention "zone of insolvency" once in her summation.  See Tr. 402:5-423:5.  Indeed, when the jury, with two lawyers among its ranks, asked for an instruction on the law regarding "zone of insolvency,"[13] Republic's counsel explicitly waived its opposition to Hallinan's objection to the jury being so instructed.  See Tr. 473:5-11 ("I will concede the issue…. We didn't raise it… [A]s much it would benefit us, I don't think it would be proper to instruct the jury on it at this point.").

Rather, Republic repeatedly asserted that Hallinan was owed a fiduciary duty as a shareholder, rather than a creditor.[14]  Republic cannot "shift gears" after trial, conduct additional research, and resuscitate – indeed, initiate – a new defense now.  At any number of points, Republic waived its "zone of insolvency" defense.

Even if Republic somehow did not waive its "zone of insolvency" defense, insolvency is properly a question of fact for the jury.  See In re Airmont Knitting & Undergarment Co., 182 F.2d 740, 741-42 (2d Cir. 1950); see also Europlast, Ltd. v. Oak Switch Sys., 10 F.3d 1266, 1271 (7th Cir. 1993) (Court, noting that "the trier of fact is most qualified to determine the question of insolvency," declined to grant judgment as a matter of law on a breach of contract claim where defendant asserted an "insolvency" defense").[15]  Moreover, privity, the ultimate issue here, is a "fact-specific" determination.

<hr>

Rule 51(a), and--unless the court made a definitive ruling on the record rejecting the request--also made a proper objection under Rule 51(c)."  Fed. R. Civ. P. 51(d)(1)(B).  See also Jarvis v. Ford Motor Co., 283 F.3d 33, 57 (2d Cir. 2002) ("[F]ailure to object to a jury instruction… prior to the jury retiring results in a waiver of that objection. . . . Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions."), citing Lavoie v. Pacific Press & Shear Co., Div. of Canron Corp., 975 F.2d 48, 55 (2d Cir. 1992).

[12] See Meacham v. Knolls Atomic Power Lab., 461 F.3d 134, 152 (2d Cir. 2006) ("Where a claim of error has its genesis in the charge or the verdict sheet and the party relying on the error for reversal or a new trial did not object at trial, the error is waived and can be reached only if fundamental error occurred.").

[13] The jury's questions to the Court were, "Can we make a factual finding as to whether Benefits Express was in the zone of insolvency at the time of the 2005 arbitration.  If so, can the Court instruct us as to the existence of fiduciary's [sic] duties by an insolvent company to its creditors."  See Tr. 460:1-6.  Hallinan objected to any further instruction to the jury.  As Republic dropped its opposition to Hallinan's objection, I declined to provide further instruction.  See Tr. 478:21-23 (Court to jury: "[T]he parties have sort of agreed that we shouldn't for a lot of different reasons make any further conversation with you on that score…").

[14] See, e.g., Plaintiff's summation at Tr. 420:25-421:6 ("What smells and looks and acts like a shareholder is a shareholder…. [W]ho is being asked about important decisions about the business? Hallinan. Who is paying for litigation expense? Hallinan… That is simply not a creditor relationship, no way.").

[15] Hallinan, citing to Europlast, asserts that the "zone of insolvency" defense is an affirmative defense that must be raised, else waived.  See Europlast, Ltd. v. Oak Switch Sys., 10 F.3d 1266, 1271 ("As an affirmative defense to terminating their relationship with [plaintiff], [defendant] maintains that [plaintiff]

See Stichting, 327 F.3d at 186.  I see no reason to disturb the jury's finding that privity did not exist between Hallinan and Benefits.  Republic's motion for judgment as a matter of law on these grounds is denied.

> ii.  *Republic's Argument That Hallinan Waived His Breach Claim Against Republic*

Republic argues that it is entitled to judgment as a matter of law on the grounds that Hallinan's breach claim is precluded by the doctrine of election of remedies.  "The New York doctrine of election of remedies provides that upon learning of a breach, a party must choose between terminating the contract and continuing performance. If a party chooses to continue performance, it must give notice of breach to the other side, or it waives its rights to sue the breaching party."  RBFC One, LLC v. Zeeks, Inc., 367 F. Supp. 2d 604, 610 (S.D.N.Y. 2005); see also Lazard Freres & Co. v. Crown Sterling Management, 901 F. Supp. 133, 136 (S.D.N.Y. 1995) ("the power to terminate a continuing contract because of a particular breach of that contract is a power of election."), citing Apex Pool Equip. Corp. v. Lee, 419 F.2d 556, 562 (2d Cir. 1969).

Republic cites Barry Kessler's testimony that in January 2002, Republic Bank represented that they "wouldn't live up to the terms of [the] agreement unless there was some other additional security… placed with the bank."  Tr. 308:22-309:4.  Kessler testified that he informed Hallinan of that "[not] too long after."  Tr. 315:7-8.  Hallinan stopped making payments to Benefits in April 2002.  Pl. Ex. 10.  Hallinan testified that he did not give written notice to Republic that they were in breach of the 2001 contract from the signing of the contract through spring 2003.  Tr. 128:24-129:4.

Hallinan first argues that Republic waived the affirmative defense of election of remedies because it failed to plead it in its Answer.[16]  See Fed. R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively… any other matter constituting an avoidance or affirmative defense"); see also Medcom Holding Co. v.

---

was insolvent…")  In Europlast, however, defendant in a breach of contract action asserted that plaintiff was insolvent, and thus that defendant was entitled to breach the contract.  Here, a different factual scenario presents itself, as Republic is asserting that third-party Benefits was in the "zone of insolvency," and thus that Benefits owed a fiduciary duty to plaintiff Hallinan.  Hallinan has provided no case directly on point that establishes that the "zone of insolvency" defense is, in fact, an affirmative defense.

Ultimately, however, because Republic did not raise the "zone of insolvency" issue at any point in these proceedings up to and including trial, I find that it is unnecessary to decide the exact issue here.

[16] Republic avers that it did plead "waiver" as an affirmative defense.  See Amended Answer ¶ 94.

Baxter Travenol Lab., 984 F.2d 223, 228 n.2 (7th Cir. 1993) ("Election of remedies is usually treated as an affirmative defense that must be raised in the answer to the complaint.").   However, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Natl Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc., 392 F.3d 520, 526 (2d Cir. 2004), citing Fed. R. Civ. P. 15(b); Luria Bros. & Co. v. Alliance Assurance Co., 780 F.2d 1082, 1089 (2d Cir. 1986).   Here, Republic argued in its motion for summary judgment that Hallinan's breach claim was barred by the doctrine of election of remedies.   See Defendant's Memorandum in Support of Summary Judgment, Oct. 20, 2006, at 22-23.   Hallinan opposed that argument on the merits, without any reference to the fact that Republic failed to raise the defense in their Answer.   See Memorandum of Plaintiff… in Opposition to Defendant's Motion for Summary Judgment, Nov. 10, 2006, at 24-25.   Republic continued to press the issue at trial.   I decline to find that Republic waived the defense of election of remedies because it failed to plead it in its answer.

However, Republic does not meet the stringent standard required for judgment as a matter of law on this issue.   Typically, where courts find that a breach claim is barred by the doctrine of "election of remedies," the claimant has not only continued to perform under the contract, but received benefits under the contract.   See Arp Films, Inc. v. Marvel Entertainment Group, Inc., 952 F.2d 643, 649 (2d Cir. 1991) ("[Plaintiff's] decision to continue receiving benefits pursuant to the [contract] was tantamount to an election to affirm the contract.") (citing cases).   Here, Hallinan's actions generally amount to inaction, rather than affirmative steps to continue to perform the contract.[17] Moreover, it is unclear what benefit Hallinan received, if any, under the contract. Republic has not shown the type of "overwhelming evidence" in support of their defense here that warrants judgment as a matter of law.   See Lambert v. Genesee Hosp., 10 F.3d

---

[17] Republic essentially argues that Republic actually breached its contract in January 2001, rather than entering into negotiations to amend the contract, and that Hallinan subsequently continued to make payments (at least up until April 2002).  It is unclear when Hallinan actually learned of Benefits' alleged breach.  It is unclear, as noted above, what benefit, if any, Hallinan received from the contract in return for his payments.  As such, Republic does not meet its burden to show, on these factual issues, "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture; or… such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded people could not arrive at a verdict against the movant."  Lambert v. Genesee Hosp., 10 F.3d 46, 56.

46, 56.

> iii.  *Republic's Argument That Hallinan's Payment of Legal Fees to*
> *Benefits Is Not Recoverable As A Matter of Law*

Republic argues that the portion of the jury's verdict over and above Hallinan's investments in Benefits – i.e., $96,695.45 – represented Hallinan's payments on behalf of Benefits towards Benefits' litigation costs, and further, that Hallinan's recovery of those payments was erroneous as a matter of law, as Hallinan cannot recover attorneys fees paid to a third party pursuant to an ordinary breach of contract claim.  Indeed, Republic notes that Hallinan did not seek to recover those attorneys' fees and costs at trial; rather, Hallinan sought to recover the monies he loaned to Benefits, and what he characterized as the value of his "unexercised option" to purchase shares of Benefits.[18]

Hallinan argues, however that the Court should not disturb the jury's award of damages, as it is unclear whether the jury did, in fact, compensate Hallinan for Benefits' attorneys' fees and litigation costs.  "It is well settled that calculation of damages is the province of the jury."  Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990); see also Taxi Weekly, Inc. v. Metropolitan Taxicab Bd. of Trade, Inc., 539 F.2d 907, 913 (2d Cir. 1976) (Court declined to revise jury's calculation of damages where an "adequate basis" existed for the jury's award).  Hallinan avers that the jury, when it awarded Hallinan $456,272.76, might have based that award in part on the value of Hallinan's "unexercised option."

Hallinan is correct that this Court should not overturn the jury's award where any "adequate basis" exists to support it.  Accordingly, this Court will not engage in a *de novo* review of the factual underpinnings of the verdict.  Still, that cannot mean that this Court lacks any power to review a jury's award where the basis upon which it rests – if that basis is clear and unequivocal – is erroneous as a matter of law.  Accordingly, I will determine which portion of the jury's verdict compensates Hallinan, in a manner that is clear, unequivocal, and susceptible of no other reasonable interpretation, for his payments

---

[18] See, e.g., Tr. 429:13-15 (Hallinan's counsel, at summation: "Follow the law, and you'll come out with an award in favor of Mr. Hallinan.  Give him his money, back the $359,000, give him something for the value of his option.").

Plaintiff's counsel subsequently noted that Hallinan might also be owed prejudgment interest on his breach claim, see Tr. 429:15-15, but did not mention at any point that Hallinan might recover the attorneys' fees paid to Benefits (let alone prejudgment interest on those monies).

to Benefits for Benefits' litigation, and then consider whether such an award is not recoverable by Hallinan as a matter of law.

The jury's award of $456,272.76 is fairly said to be comprised of two parts – one definite, and one less so. The first part is the $359,577.31 that Hallinan testified that he invested in Benefits. It is clear that the jury awarded Hallinan this money on that basis because the jury specifically stated that prejudgment interest shall be calculated in part "based on each amount stated from each payment date stated on Plaintiff's exhibit 10," which is a chart that details Hallinan's payments into Benefits that totaled $359,577.31.[19] Republic does not challenge this portion of the award.

The second part of the award is the remaining $96,695.45 over and above Hallinan's $359,577.31 investment. As Republic notes, the jury also specifically stated that prejudgment interest shall be calculated "based on each amount stated from each payment date stated on… [D]efendant's exhibit R." See Judgment. Yet under no possible calculation do those checks listed in Defendant's Exhibit R add up to an amount equaling the difference between the payments listed in Plaintiff's Exhibit 10 (i.e. $359,577.31) and the total verdict of $456,272.76 – i.e., $96,695.45. Nor do those checks listed in Defendants' Exhibit R add up to either the amount of money that Hallinan testified he paid towards Benefits' litigation costs (i.e., $83,195.45) or the amount of money that the evidence *in toto* showed Hallinan paid towards Benefits' litigation costs (i.e., $97,689.45).[20] Rather, the checks listed in Defendant's Exhibit R add up to either $57,854.69 (if one counts the duplicate copy of the December 30, 2004 check for $6,000, as the Clerk of the Court did when it computed prejudgment interest), or a total of $51,854.69 (not counting the duplicate $6,000 check).

It is clear, unequivocal, and susceptible of no other reasonable interpretation that the jury intended to compensate Hallinan for the payments of Benefits' legal fees and costs listed in Defendant's Exhibit R. Accordingly, I will consider whether the $57,854.69 of payments listed in Defendant's Exhibit R, upon which the Clerk calculated

---

[19] The exhibit is labeled "Payments by Hallinan under November 2001 contract." See Pl. Ex. 10.

[20] Nor, as one can quickly infer, does the remaining $96,695.45 that the jury awarded Hallinan equal the $97,689.45 that the evidence *in toto* showed Hallinan paid towards Benefits' litigation costs. (Nor, for what it is worth, is there any plausible basis, on the evidence presented, for the jury to have compensated Hallinan for his payments towards Benefits' litigation costs but "knocked it down" $1,006.)

prejudgment interest, are recoverable by Hallinan as a matter of law.[21]  (I decline to question the jury's award of the remaining $38,840.76.)[22]

The default "American Rule" requires each party to bear its attorney's fees.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 257, 269-71 (1975) ("Alyeska Pipeline") (Court held that attorneys' fees may generally be awarded only pursuant to statute, noting "the general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees").[23]  "There is no… right to an award of attorney's fees on an ordinary claim of breach of contract."  United States Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 698 (2d Cir. 1991), citing Alyeska Pipeline, 421 U.S. at 247.  Accordingly, Republic essentially argues, if Hallinan could not recover his own attorneys' fees and costs from Republic in this action, it follows a fortiori that Hallinan cannot recover Benefits' attorneys fees and costs in another action from Republic in this action.

Hallinan argues that "[c]onsequential damages may include out-of-pocket expenses stemming from related litigation."  Limited, Inc. v. McCrory Corp., 683 F. Supp. 387, 393 (S.D.N.Y. 1988), citing, e.g., Central Trust Co. v. Goldman, 70 A.D.2d 767, 767-68 (N.Y. App. Div. 1979) (attorney's fees recoverable if they are "the proximate and natural consequence of defendants' tortious act which requires plaintiff to defend or

---

[21] This Court understands that it is less than clear that the jury intended to compensate Hallinan twice for his $6,000 payment of Benefits' legal fees on December 30, 2004.  In the spirit of deference to the jury's designation of Defendant's Exhibit R and its award of prejudgment interest stemming therefrom, I will consider the monies listed in Exhibit R in toto.  (Indeed, were I to consider only a portion of the payments listed in Defendant's Exhibit R – i.e., the $51,854.69 of listed payments without the duplicate check – I would, as a necessity to reach that decision, essentially be reviewing the factual underpinnings of the jury's verdict, an inquiry I am loath to undertake.)

[22] Regarding the remaining $38,840.76, it is plausible, if only just, that the jury awarded those monies to Hallinan as the value of his "unexercised option."  Hallinan testified that the value of his option could have been worth $8 million dollars, and that that option was "rendered valueless" by Republic.  See Tr. 117: 8, 118:6-10.  At this stage of the analysis, so long as "some evidence" supports this portion of the jury's verdict, this Court will not engage in a weighing of that evidence.

[23] The Alyeska Pipeline Court, noting that a "very different situation is presented when a federal court [sits] in a diversity case," allowed that a federal court might award attorneys' fees pursuant to a state statute that so provided  Alyeska Pipeline, 421 U.S. at 257 n.31, citing People of Sioux County v. National Surety Co., 276 U.S. 238, 243 (1928); Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).  However, "the question of the proper rule to govern in awarding attorneys' fees in federal diversity cases in the absence of state statutory authorization loses much of its practical significance in light of the fact that most States follow the restrictive American rule."  Alyeska Pipeline, 421 U.S. at 257 n.31.  Here, although this Court sits in diversity interpreting New York law, there appears to be no New York law that departs from the "American Rule" and authorizes an award of attorneys' fees in an ordinary breach of contract claim such as Hallinan's.

bring an action against a third party"), <u>appeal dismissed</u>, 394 N.E.2d 290 (N.Y. 1979). However, the caselaw Hallinan cites provides that such consequential damages might be recoverable in a *tort* action – not a contract action.  See Limited, Inc. v. McCrory Corp., 683 F. Supp. 387, 391 (plaintiff alleged fraud, negligence, and RICO claims); Central Trust Co. v. Goldman, 70 A.D.2d 767, 767 (plaintiff alleged fraud and malpractice claims).  "It is well-settled law in [New York] that consequential damages are not recoverable in an action to recover damages for breach of contract in the absence of the plaintiff's 'showing that such damages were foreseeable and within the contemplation of the parties at the time the contract was made.'"[24]  Martin v. Metropolitan Prop. & Cas. Ins. Co., 238 A.D.2d 389, 390 (N.Y. App. Div. 1997), citing, e.g., American List Corp. v. U.S. News & World Report, Inc., 549 N.E.2d 1161 (N.Y. 1989).  No evidence at trial showed or implied that Republic foresaw at the time of the contract that Hallinan might volunteer to pay Benefits' future legal fees and costs in litigation to which Hallinan was not a party.[25]

Hallinan's arguments do not warrant departure from the standard rule that a litigant may not be awarded attorneys' fees and costs on a breach of contract claim. Accordingly, no legal authority supports Hallinan's recovery of such fees and costs here. I grant in part Republic's motion for judgment notwithstanding the verdict and vacate the portion of the jury's award that compensated Hallinan for his payments of Benefits' legal fees – i.e., the $57,854.69 listed in Defendant's Exhibit R, plus the prejudgment interest

---

[24] Moreover, although "damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract," "damages are calculated at the time of the breach."  See, e.g., Boyce v. Soundview Tech. Group, Inc., 464 F.3d 376, 384 (2d Cir. 2006).  Hallinan's payments of Benefits' legal fees and costs were all subsequent to Benefits' breaching of the contract.

[25] Additionally, Limited and its precursors address situations where defendants' tortious actions proximately caused plaintiff to incur additional liability, and thus defend or bring related litigation.  Thus, as Republic notes, Limited and its precursors support the proposition that had defendant Republic committed a tort that subjected Hallinan to additional liability to a third-party, Hallinan's legal fees vis-à-vis that third party might be recoverable from Republic.  Thus, assuming *arguendo* that Republic committed a tort, Hallinan here might be able to recover from Republic his legal fees in an action vis-à-vis Benefits.

Here, however, the situation is different – Hallinan seeks to recover the third-party's (Benefits') legal fees vis-à-vis the defendant (Republic), without any allegation that his own legal liability was affected by Republic's actions.  (Additionally, it is worth noting that no litigation has ever been commenced by Benefits against Hallinan, or Hallinan against Benefits.)  And again, subsequent to Republic's breach, Hallinan *volunteered* to pay Benefits' legal fees and costs.

stemming therefrom.[26]

B. Republic's Motions for a New Trial

 i. *The Court's Charges Relating to Privity*

Regarding privity, I instructed the jury at trial in this manner:

> "As a threshold matter, you must determine whether privity existed
> between Hallinan and Benefits at the time of the prior arbitration.
> Privity exists if Hallinan was represented during the prior legal
> proceeding by another… 'vested with the authority of
> representation,' or if Hallinan exercised 'some degree of actual
> control' over the presentation of Benefits' case in the prior
> proceeding."[27]

> In determining whether Hallinan was represented during the prior
> legal proceeding by another 'vested with the authority of
> representation,' you should first determine whether… from a
> preponderance [of the credible evidence] whether Hallinan was a
> shareholder of Benefits at the time of the prior arbitration. Privity
> can exist where the party in the prior proceeding acted in a
> fiduciary capacity in protecting the non-party's interest."[28]

> A company has a fiduciary duty to act for the benefit of its
> shareholders. Thus, you may consider the fact of whether or not
> Hallinan was a shareholder of Benefits in determining whether
> privity existed between Hallinan and Benefits at the time of the
> prior arbitration.  However, if you determine that Hallinan was a
> shareholder of Benefits, that did not automatically establish privity
> between Hallinan and Benefits.  There is no bright line rule as to
> whether or not shareholders are in privity with their corporation.[29]
> You must consider all the facts and determine whether Hallinan
> was in privity [in] a prior proceeding by another vested with the
> authority of representation.

> Privity also exists if the non-party to the prior proceeding…
> exercised 'some degree of actual control] over the presentation of
> the parties' case in the prior proceeding, such as formulating [an]

---

[26] The Clerk of the Court calculated the prejudgment interest stemming from the $57,854.69 listed in Defendant's Exhibit R to be $8,207.32.  See Judgment.

[27] This instruction closely followed the Circuit's language in Stichting, 327 F.3d 173, 184-85.

[28] See Amalgamated Sugar Co. v. NL Industries, Inc., 825 F.2d 634, 641 (2d Cir. 1987) ("collateral estoppel can be applied to nonparties where the litigating party acted in a fiduciary capacity in protecting the nonparties' interest"), citing Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 593, 94 S. Ct. 806, 819, 39 L. Ed. 2d 9, rehearing denied, 415 U.S. 986, 94 S. Ct. 1582, 39 L. Ed. 2d 883 (1974).

[29] See Amalgamated Sugar Co. v. NL Industries, Inc., 825 F.2d 634, 640.

overarching strategy over the parties' case, or deciding what legal theories and evidence should be advanced.[30]  Thus, you may also find privity if the plaintiff exercised some degree of actual control over the representation or presentation of Benefits' case in the prior arbitration. Again, all the circumstances must be considered, and it is from all the circumstances that you may infer whether or not there was participation amounting to a sharing and control of the litigation."[31]

See Tr. 448:10-450:3.

Republic argues that this instruction was erroneous, and warrants a new trial. Republic's argument is as follows.  First, according to Republic, New York law provides for a "broader" formulation of privity by representation than the "federal common law" cited by this Circuit in Stichting, 327 F.3d 173, 184-85, and other cases.  According to Republic, whereas the Circuit requires "representation by another vested with the authority of representation," New York law allows for privity if one's rights or obligations are "conditioned on" or "derivative of" the prior litigant's.  Compare Stichting, 327 F.3d at 185, with Juan C. v. R.C. Cortines, 679 N.E.2d 1061, 1065 (N.Y. 1997) ("Juan C"), citing D'Arata v. New York Cent. Mut. Fire Ins. Co., 564 N.E.2d 634, 637 (N.Y. 1990); see also Beatus v. Gerbia, 4 F.Supp.2d 256, 260 (S.D.N.Y. 1998).  That said, under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), Republic concludes that since the issue of privity involves substantive considerations of relationships between parties, a federal court sitting in diversity should apply the law of privity of the forum state.  See Federal Ins. Co. v. Gates Learjet Corp., 823 F.2d 383, 386 (10th Cir. 1987). Accordingly, Republic avers, I erred when I declined to instruct the jury on the "broader" New York law of privity containing Republic's preferred "conditioned on" or "derivative of" language. [32]

---

[30] See Stichting, 327 F.3d at 185.

[31] See Juan C. v. R.C. Cortines, 679 N.E.2d 1061, 1065 (N.Y. 1997) ("all the circumstances must be considered from which one may infer whether or not there was participation amounting to a sharing in control of the litigation"), citing Watts v. Swiss Bank Corp., 265 N.E.2d 739, 743-44 (N.Y. 1970).

[32] Although Hallinan protests to the contrary, Republic preserved this argument at trial.  Republic proffered a privity charge containing the "conditioned on" or "derivative of" language from Juan C. v. R.C. Cortines in an untranscribed charging conference, and renewed its objection to the omission of the charge on the record the next morning at the close of evidence.  See Tr. 388:24-389:14 (Republic counsel: "…[W]e do object to your not providing a virtual representation instruction… that a finding that Mr. Hallinan's damages are derivative…" Court: "…I supposed you provided it?" Law Clerk: "He is talking about the [Juan C] case on privity." Republic counsel: "Yes." Court: "…Your objection is on the record."); see also

Republic errs, though, when it characterizes its proffered language as a substantively different and "broader" doctrine of New York privity law than the instructions I provided the jury.  Rather, "the federal doctrine [of *res judicata*] uses privity in a way similar to its use under New York law."  Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995) (in a diversity action, where the issue of privity is addressed, both federal and New York law lead to the same result), citing, e.g., Watts v. Swiss Bank Corp., 265 N.E.2d 739, 743 (N.Y. 1970); Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir. 1977).

A closer look at New York caselaw reveals that the "conditioned on" or "derivative of" language of Juan C is merely descriptive as to general principles of privity.  Indeed, the Juan C Court prefaced the "conditioned on" or "derivative of" language with the disclaimer "in general," and went on to note that the "the term privity does not have a technical and well-defined meaning."  Juan C., 679 N.E.2d at 1065, citing Watts v. Swiss Bank Corp., 265 N.E.2d 739, 743 (N.Y. 1970).[33]  The New York Court of Appeals' most recent articulation of privity principles does not even mention the "conditioned on" or "derivative of" language.  See Buechel v. Bain, 766 N.E.2d 914, 920 (N.Y. 2001).[34]  That said, the paradigmatic formulation of privity repeated consistently by the New York Court of Appeals echoes the language used by the Second Circuit, and the language I used, to the extent relevant, in my jury instructions.  See Watts v. Swiss Bank Corp., 265 N.E.2d at 743 (the term privity "includes those who are successors to a property interest, those who control an action although not formal parties to it, those

---

Tr. 400: 12-14 (Court noted Republic's remaining concern "about privity and using New York law versus using Federal law which is a little more constricted.").

[33] Indeed, it is hard for Republic to argue that specific language should be proffered to the jury when New York courts freely admit that as a matter of law, the definition of privity is "amorphous."  See Juan C., 679 N.E.2d at 1065.

It bears mentioning as well that both federal and New York courts stress that the determination of privity is a fact-specific inquiry.  See Stichting, 327 F.3d 173, 186 (privity "is a factual determination of substance, not mere form"), citing Expert Elec., Inc. v. Levine, 554 F.2d at 1233; compare Juan C., 679 N.E.2d at 1065 ("all the circumstances must be considered from which one may infer whether or not there was participation amounting to a sharing in control of the litigation").  Notably, I explicitly included this language from Juan C. in the instructions given to the jury.  See Tr. 449:25-450:3.  This as well counsels against disturbing the jury's verdict.

[34] The Buechel dissent does purport to markedly distinguish New York law from federal law in that it distinguishes from the two traditional categories of privity (i.e. "representation" and "control") a separate and distinct third category recognized by New York courts – that where rights or obligations are "conditioned on" or "derivative of" the prior party's rights.  See Buechel v. Bain, 766 N.E.2d 914, 928 (Levine, J., dissenting).  That said, it is, of course, a dissent.

whose interests are represented by a party to the action, and possibly coparties to a prior action."), cited approvingly, Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d at 346; see also Buechel v. Bain, 766 N.E.2d at 920 (similar); Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) (similar, interpreting New York law).

As Hallinan notes, Republic is not entitled to proffer every conceivable formulation of privity to the jury. Rather, "a trial court has discretion in the style and wording of jury instructions, so long as the instructions, taken as a whole, do not mislead the jury as to the proper legal standard, or [in]adequately inform the jury of the law." Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 106 (2d Cir. 2001) (citations and formatting omitted). The instructions given to the jury adequately informed the jury of the proper legal standard here. Based on the evidence presented, the jury had sufficient evidence to determine that privity did not exist between Hallinan and Benefits. Republic's argument for a new trial on these grounds is unavailing.

Two other arguments by Republic for a new trial relating to instructions given to the jury are worthy of mention. First, Republic argues that I erroneously provided a supplemental instruction to the jury that Republic bore the burden of proving privity. After receiving a note from the jury asking "In regard to privity, who has the burden of proof?" I told the jury, "It is as it usually is, the party who is asserting, the party… who is trying to prove a point or an issue has the burden. In this case, Republic is trying to prove this issue. So I don't think there is much question but that in this particular situation they have the burden of proof." See Tr. 478:10-17. The instruction was proper. "The general rule is that the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim." National Communs. Ass'n v. AT&T Corp., 238 F.3d 124, 131 (2d Cir. 2001). Additionally, as an affirmative defense, Republic bears the burden of proof on privity. Cf. Alesayi Bev. Corp. v. Canada Dry Corp., 947 F. Supp. 658, 665 n.10 (S.D.N.Y. 1996) ("[as] an affirmative defense, the party asserting *res judicata* bears the burden of proof that the doctrine is applicable."). Republic's argument is unavailing.[35]

---

[35] Republic argues that while the party seeking the benefit of collateral estoppel bears the burden of demonstrating identity of issues, the party attempting to defeat its application bears the burden to establish the absence of a full and fair opportunity to litigate. See, e.g., Kaufman v. Eli Lilly & Co., 482 N.E.2d 63, 67 (N.Y. 1985). As Hallinan points out, though, and Republic does not contest on reply, Republic is

Secondly, Republic argues that a short colloquy I had with the jury regarding *res judicata* when the jury asked for a supplemental instruction on privity prejudiced Republic's rights so much that it deserves a new trial. I stated to the jury, in relevant part, "…[T]he underlying issue with respect to privity is *res judicata*. *Res judicata* is really my decision to make and it is not yours." Tr. 479: 6-8. Republic avers that this instruction somehow implied that *res judicata* and privity had already been decided in Hallinan's favor. Notwithstanding that Republic did not object at that time, I stated the law neutrally, and correctly. See, e.g., Energycresent, Inc. v. Creative Modules Enterprises, Inc., 183 A.D.2d 804 (N.Y. App. Div. 1992) ("the issue of the applicability of res judicata… presents a question of law, not of fact."). Republic's argument is similarly unavailing.[36]

### ii. Hallinan's Closing Argument

Republic objects that Hallinan's counsel made inappropriate and prejudicial remarks during summation, such as referring to Republic as a "bully."[37] Such argument does not warrant a new trial. "Not every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted." Marcic v. Reinauer Transp. Cos., 397 F.3d 120, 127 (2d Cir. 2005) (Court declined to grant new trial because counsel did not "engage in personal attacks on opposing counsel, nor did he utilize epithets or slurs, or appeal to the jury's regional,

---

arguing that *res judicata*, not collateral estoppel, applies to Hallinan.

[36] Republic also argues that my statement to the jury, when I declined to instruct them on the "zone of insolvency" defense (after Republic dropped their opposition to Hallinan's objection to any instruction), that to instruct on the zone of insolvency would "essentially open a can of worms" because it involved "legal questions" warrants a new trial. See Tr. 479:10-12. As noted previously, Republic has waived any objection it had to any "zone of insolvency" instructions. Even if not, Republic's argument is unavailing.

[37] Republic also avers that Hallinan's counsel referred to matters outside the evidence in his summation. Specifically, Republic objects to Hallinan's counsel's reference to the "hostile takeover" by Republic of Benefits, when I had sustained Republic's objection to Barry Kessler's reference to the 2003 sale of Benefits to Republic as a "takeover." See Tr. 257:5-8. However, Republic's counsel subsequently elicited extensive testimony from Kessler on cross regarding the 2003 sale of Benefits to Republic (although much of that testimony was not favorable to Republic). See Tr. 333-338; see also, e.g., Tr. 332:23-333:17 (Republic counsel: "Isn't it also true that Republic offered to give Benefits Express back to you or help you try to transfer it to another bank?" Hallinan counsel: "Objection." Court: "Overruled." Kessler: "That was a disingenuous offer…. [T]he bank breach[ed] its 90-10 agreement… [and] drained the life out of the business." Court: [Hallinan's counsel] wanted to object to that question. Now he may have rethought his position."). Republic cannot complain now of Hallinan's counsel's reference to a "takeover" when it elicited substantially the same testimony from Kessler itself.

*iii. The Court's Exclusion of Testimony Relating to Republic's "Waiver"*
*Defenses*

Republic moves, in the alternative to its argument for judgment as a matter of law,
for a new trial on the grounds that this Court's exclusion of evidence relating to events
from 2003 onward prejudiced Republic's ability to mount their "waiver" and "election of
remedies" arguments.

I excluded evidence relating to the 2003 purchase of Benefits by Republic, in part
because Hallinan's claims related only to the 2001 contract between the parties, and in
part because I did not want to prejudice Republic by allowing evidence of any "duress"
by Republic upon Benefits relating to that sale.[39]  Republic has identified no evidence
that it would have offered that would have materially changed the outcome regarding
their "waiver" and "election of remedies" arguments.  For similar reasons to those
articulated in Section III.A.ii. above, Republic's motion on these grounds is denied.

## IV.    CONCLUSION

For the foregoing reasons, Republic's motion for judgment as a matter of law is
DENIED except insofar as the portion of the judgment that compensated Hallinan for his
payments of Benefits' legal fees – i.e., the $57,854.69 listed in Defendant's Exhibit R,
plus the prejudgment interest stemming therefrom – is VACATED.  Republic's motion
for a new trial is DENIED in its entirety.

The Clerk of the Court is directed to close this matter and remove it from my
docket.

**SO ORDERED.**
**September ⁷ , 2007**
**New York, New York**

U.S.D.J.

---

[38] It warrants mentioning that I instructed the jury that lawyers' closing arguments are not evidence. See
Tr. 434:1-4.
[39] As noted supra, note 38, Republic's counsel subsequently elicited testimony on these topics itself.

22